IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION



FILED
MAY 16 2014
Clerk, U.S. District Court
District Of Montana
Missoula

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 13–30–M–DWM–12 |
| Plaintiff, | |
| vs. | OPINION AND ORDER |
| JOSHUA PETERSEN, | |
| Defendant. | |

Defendant Joshua David Petersen's Motion to Suppress and request for a *Franks* hearing is now before the Court. (*See* Doc. 376.) Petersen seeks suppression of all evidence and statements obtained following execution of a federal search warrant on his residence on October 2, 2013. (Doc. 377 at 1-2.) He alleges that material misrepresentations and omissions in the warrant affidavit negate the probable cause to search his residence on which the warrant was based. (*Id.*) Petersen's Motion is opposed. (Doc. 376 at 2; Doc. 391.) Also under consideration is the United States' Motion to Allow Expert Testimony via Video, (Doc. 378), should the Court grant Petersen's request for a *Franks* hearing. Petersen's Motion and request are not well-taken and will be denied. The United States' Motion will accordingly be denied as moot.

-1-

## I. Factual Background

Joshua David Petersen is one of fourteen individuals charged following an investigation into an internet child pornography bulletin board[1] created by the lead Defendant, Paul Wencewicz of Polson, Montana. (Doc. 127-1.) Eleven Defendants, including Wencewicz, have pled guilty.[2] One Defendant is deceased. (*See* Doc. 405.) Petersen is one of the two remaining Defendants who may proceed to trial. Trial is set for June 23, 2014. (*See* Docs. 185, 439.)

The Second Superseding Indictment alleges that Petersen engaged in a child exploitation enterprise (Count I), in violation of 18 U.S.C. § 2252A(g), and conspired to advertise child pornography (Count II), in violation of 18 U.S.C. § 2251(d) and (e). (Doc. 186.) If convicted, Petersen faces a mandatory minimum sentence of 20 years, with a possibility of up to life, in prison, a term of supervised release of at least five years and up to life, and a possible fine of up to $250,000. (*Id.*)

Defendant's Motion tests the sufficiency of the warrant affidavit. On review, the Court is limited to the information and circumstances within the four

---

[1] The bulletin board that gave rise to the charges in this criminal case is referred to by various names in the pleadings and relevant documents, including "Bulletin Board 1", "Kingdom of Future Dreams", and "KOFD".

[2] *See* Docs. 281, 339, 346, 347, 370, 373, 381, 392, 406, 408, and 415.

corners of the affidavit. *United States v. Taylor*, 716 F.2d 701, 705 (9th Cir. 1983). On September 30, 2013, Federal Bureau of Investigation ("FBI") Special Agent Dawn A. Martin presented an application for a search warrant and 55-page supporting affidavit to United States Magistrate Judge Mark E. Aspey of the United States District Court for the District of Arizona. (Doc. 379-1 at 55.) The warrant affidavit included detailed factual allegations about activity on the bulletin board. This information was derived from two primary sources: undercover logins to the board using credentials supplied by Wencewicz incidental to a search of his residence and analysis and review of a backup copy of the board obtained from law enforcement in the United Kingdom following its seizure from an individual living on the Isle of Jersey. (*Id.* at 19-23.)

The affidavit described the composition and operation of the board as follows. The board was a members-only community created to allow its 44 members to exchange images of children, including child pornography. (*Id.* at 19-21.) Content posted on the bulletin board was divided into a total of eight forums and 28 sub-forums. (*Id.* at 21-22.) Members were divided into membership levels with various privileges and responsibilities. (*Id.* at 21-25.) Membership levels included groups called Administrators, Moderators, Legionaires, and Castle Residents. (*Id.*) For context and background, the affidavit presented common

characteristics of individuals who advertise, receive, or access with intent to view child pornography and detailed how evidence of these crimes is commonly located in these individuals' residences and on their computers and other electronic devices. (*Id.* at 16-19.) It also recited Special Agent Martin's qualifications and the law she asserted as applicable to the facts in the case. (*Id.* at 1-5.)

The warrant affidavit directly targeted the conduct of one member of the board, a "Castle Resident" referred to as "Aqualung,"[3] and alleged that this individual "likely displays characteristics common to individuals who advertise, receive, and/or access with intent to view child pornography." (*Id.* at 19.) Aqualung became a member of the board on November 19, 2009 and last accessed the board on March 16, 2012. (*Id.* at 42.) Aqualung used the email address eatme132001@yahoo.com to create his member account on the board. (*Id.* at 42, 49.) The FBI served a subpoena on Yahoo to provide subscriber information regarding the account. (*Id.* at 49.) Yahoo provided connection logs for the account an alternate email address for the user: m44u@msn.com. (*Id.*) The Yahoo connection logs and logs collected from the undercover logins and the backup of the board were found to be linked to Cable One, an internet service

---

[3] Online bulletin boards often require members to create a nickname or screen name. (*See* Doc. 379-1 at 21.) "Aqualung" is also referred to as "User 20" and "Member 20" throughout the affidavit.

provider. (*Id.*) The FBI served a subpoena on Cable One to collect information about the subscriber linked to the connection logs. (*Id.*) Cable One associated the connection logs with an individual subscriber, Norma Petersen of Prescott, Arizona, and a User ID: m44u. (*Id.*) The FBI served a subpoena on Microsoft to provide subscriber information for the m44u@msn.com email account. (*Id.*) Microsoft provided subscriber information associating the account with Joshua Petersen of Prescott, Arizona. (*Id.* at 50-51.) Subsequent investigation, including a review of driver licensing records, connected Joshua Petersen's physical address to the physical address provided by Microsoft and Cable One. (*Id.* at 52-53.)

The affidavit sought a warrant to search Joshua Petersen's residence at the physical address provided by Microsoft and Cable One. (*Id.* at 1-2, 54.) It alleged probable cause was present to issue a search warrant for contraband, evidence, fruits, and instrumentalities of violations of 18 U.S.C. §§ 2251 and 2252A, more specifically, § 2251(d) and (e), which criminalizes the act of conspiring to advertise child pornography. (*Id.* at 1-2.) The search warrant affidavit presented a description of alleged criminal conduct on the board directly undertaken by Defendant Petersen and a recitation of other related conduct by other members of the bulletin board. This conduct formed the basis for the affiant's statement of probable cause. (*Id.* at 54-55.) The affidavit also included pertinent background

information on computers and the internet, (*id.* at 5-8), online bulletin boards, (*id.* at 8-13), electronic evidence collection and analysis, (*id.* at 13-16), and characteristics common to individuals who commit child pornography offenses, (*id.* at 16-19), as relevant to the circumstances of this case.

The warrant affidavit alleged that members posted child pornography on the bulletin board. The affidavit described members posts to the bulletin board, which were alleged to include images and links to images of female children engaging in sexually explicit conduct, as well as members' comments on the same. (*Id.* at 25-42.) Many of the posts were stated to include images depicting nude prepubescent females in sexually explicit poses. (*Id.*)

In addition to linking Defendant Petersen to Aqualung's bulletin board account, the affidavit included specific allegations of criminal conduct engaged in by Petersen as a member the board. (*See id.* at 42-47.) In response to another member's posting of several images of an apparent minor female in various states of undress, Petersen allegedly asked Wencewicz, the creator of the bulletin board, to post the movie 'Maladolescenza' on the board. (*Id.* at 44.) The affidavit represented that "'Maladolescenza' contains nudity and simulated sex acts with two 12-year old prepubescent actresses and has been banned as child pornography in various countries." (*Id.*) Petersen allegedly also responded to postings of

sexually explicit images of "Katya" and "Liliana," both minor females. (*Id.* at 44-47.)

Furthermore, the affidavit presented allegations of Petersen's criminal conduct on other bulletin boards. (*See id.* at 48.) The affiant stated that "[a] review of the communications on the Board reveals that [Petersen] was involved with other bulletin boards and was a founding member of the boards." (*Id.*) Petersen allegedly advised members of the board regarding his activity on other boards and provided his thoughts on how to best avoid law enforcement detection. (*Id.*)

## II.  Summary Conclusion

Petersen alleges that the warrant affidavit intentionally or recklessly included false information material to the magistrate judge's finding of probable cause. He also alleges that the warrant affidavit intentionally or recklessly omitted material information. The Court finds that Petersen's claim that the warrant affidavit includes false information is unfounded and directly refuted by information presented by the government in Response to the Motion. Petersen is correct, though, in his assertion that the affidavit does not include information about the coding of images he allegedly commented on or about other images he posted to the board. This information was available to the government at the time

the affidavit was submitted and it was not included. But the omitted material is not entirely beneficial to Petersen's position and is, on the whole, not exculpatory of the allegation that he possessed or accessed with intent to view child pornography. Furthermore, the omitted material does not affect a finding of probable cause as to his participation in the conspiracy to advertise child pornography set forth in the warrant affidavit. Since Petersen has failed to show the materiality of the omissions alleged in his Motion and has not attacked the conspiracy allegations, a *Franks* hearing and the ultimate remedy he seeks, suppression of evidence derived from execution of the search warrant, is denied.

## III. Legal Standards

The Warrant Clause of the Fourth Amendment specifies that, absent certain exceptions, a law enforcement official must obtain a warrant from a neutral and disinterested magistrate before carrying out a search. Specifically, the Clause states that "no [w]arrants shall issue, but upon probable cause, supported by [o]ath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v.*

*Gates*, 462 U.S. 213, 238 (1983).

One way a criminal defendant may attempt to invoke the Fourth Amendment's protection against unwarranted searches is by seeking a hearing regarding the truthfulness of factual statements made in an affidavit supporting a warrant application. *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978).

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Id.* The affidavit is entitled to a presumption of validity. *Id.* at 171. A defendant may defeat this presumption only by making a substantial showing of both intentional or reckless falsehoods or omissions and the materiality of those falsehoods or omissions to the finding of probable cause. *Id.* at 171-72; *United States v. Stanert*, 762 F.2d 775, 780-81 (9th Cir. 1985), *modified*, 769 F.2d 1410 (9th Cir. 1985). The defendant bears the burden of proof and must make a substantial preliminary showing as to both elements. *United States v. Garcia-*

*Cruz*, 978 F.2d 537, 540 (9th Cir. 1992). The materiality inquiry calls for excision of allegedly false information and interlineation of information allegedly omitted. *Stanert*, 762 F.2d at 782 (citing *Franks*, 438 U.S. at 171-72) ("A defendant challenging an affidavit must . . . show that the affidavit purged of [the] falsities and supplemented by the omissions would not be sufficient to support a finding of probable cause.") A district court's decision to grant or deny a *Franks* hearing is reviewed *de novo*, while the underlying finding as to whether intentional or reckless false statements were made is reviewed for clear error. *United States v. Meek*, 366 F.3d 705, 716 (9th Cir. 2004) (citing *United States v. Schyrock*, 342 F.3d 948, 975 (9th Cir. 2003)).

## IV. Analysis

Petersen must meet two conditions to be entitled to a *Franks* hearing on his Motion to Suppress. He must make a substantial preliminary showing of intentional or reckless falsehoods or omissions. Then he must demonstrate the materiality of those falsehoods or omissions to the magistrate's finding of probable cause that evidence of one of the crimes set forth in the warrant affidavit would be found at his residence. The criminal conduct alleged in the affidavit is advertisement of child pornography, in violation of 18 U.S.C. § 2251(d), conspiracy to advertise child pornography, in violation of § 2251(d) & (e), receipt

or distribution of child pornography, in violation of § 2252A(a)(2), conspiracy to receive or distribute child pornography, in violation of § 2252A(a)(2) & (b)(1), possession of or accessing with intent to view child pornography, in violation of § 2252A(a)(5)(b), and conspiracy to possess or access with intent to view child pornography, in violation of § 2252A(a)(5)(b) & (b)(2). Petersen makes two arguments in support of his Motion for a *Franks* hearing: (1) he claims that the affidavit included recklessly false information material to the magistrate's determination of probable cause by suggesting his request to another member of the board to post the movie 'Maladolescenza' was criminal in nature, (Doc. 377 at 14-16), and (2) he suggests that the affidavit recklessly omitted material information regarding images he posted comments about and other images that he uploaded to the board, (*id.* at 16-21).[4] The alleged falsehoods or omissions are each considered in turn, followed by an analysis of their materiality.

Petersen contends the affidavit recklessly included false information in relation to a movie he requested another member to post on the bulletin board. (*Id.* at 14-16.) The affidavit alleged that Petersen interacted with other members

---

[4] The Brief in Support of Petersen's Motion also presents a third argument: Petersen's claim that the affidavit was misleading because a password was allegedly required to access sexually explicit images of children posted on the board. (Doc. 377 at 20-21.) The United States contests the factual basis for this claim in its Response. (Doc. 391 at 23-24.) Petersen's Reply brief states that this argument is withdrawn. (Doc. 407 at 5-6.) It is accordingly not considered.

on the board in a conversation thread that included a post with "numerous urls and images of a female in various states of undress posing seductively. In several images, the female appears to be a minor based on her youthful face, little breast development, and lack of pubic hair." (Doc. 379-1 at 43-44.) In reply, Petersen allegedly asked Wencewicz, the creator of the board, to post a movie entitled 'Maladolescenza.' (*Id.* at 44.) Paragraph 106 of the affidavit stated that the movie "contains nudity and simulated sex acts with two 12-year old prepubescent actresses and has been banned as child pornography in various countries." (*Id.*) Petersen claims Paragraph 106 was a false statement because the film is available for purchase on Amazon.com and therefore cannot constitute evidence of illegal activity. (*Id.* at 44-46.)

Although it has been observed that recent Supreme Court jurisprudence grants corporations outsized influence over the political process, *see Citizens United v. Fed. Election Commn.*, 558 U.S. 310, 478-79 (2010) (Stevens, J., dissenting), corporate entities like Amazon.com have yet to be explicitly vested with legislative authority, which remains the sole province of the Congress. The commercial availability of contraband does not alter the criminal nature of a product under federal law. *Cf. Gonzalez v. Raich*, 545 U.S. 1, 25-26 (2005). Petersen's claims about the film "Maladolescenza" are without merit. Paragraph

106 did not present false information. The affidavit included the agent's sworn statement in Paragraph 106 that the film is criminal in nature, particularly because it "contains nudity and simulated sex acts with two 12-year old prepubescent actresses and has been banned as child pornography in various countries." (Doc. 379-1 at 44.) Evidence now before the Court corroborates this statement. (*See* Docs. 391-3 to 391-5.) The only evidence marshaled by Petersen in support of his argument is a screenshot of Amazon.com that shows the film is, or was at one time, available for purchase on the site from a third-party vendor. (Doc. 377-3.) The screenshot omits customer comments, corroborative of the agent's statements in the affidavit, which observe that the film is child pornography. (*See* Doc. 391-3 at 2.) The United States also contests that the film is currently available for purchase. (*See* Doc. 391-3.) Either way, Agent Martin did not recklessly include false information in the warrant affidavit by referring to "Maladolescenza" as illegal child pornography.

Petersen argues that the warrant affidavit recklessly omitted material information about the images that he posted comments about on the board. (Doc. 377 at 16-20.) Petersen first claims that Special Agent Martin may not have actually viewed the images referred to in the affidavit at Paragraphs 103, 109, 110, and 115. (*Id.* at 16.) This is directly refuted by the affidavit submitted by Special

-13-

Agent Martin in support of the government's Response. (*See* Doc. 391-2.) There, Special Agent Martin states that she personally reviewed the images described in the contested portions of the warrant affidavit, and confirmed the accuracy of descriptions of the images provided by another agent, Special Agent Damuth, prior to submitting the affidavit. (*Id.*)

Petersen claims that the affidavit recklessly omitted information about Special Agent Gordon's classification of the images he posted comments about on the board. (Doc. 377 at 17-20.) He argues that, in an initial review of the information recovered from the board, Special Agent Gordon classified four of the five images mentioned in the affidavit as "indicative" or "material depicting children not involved in sexual activity that are lawful to possess but shows an interest in children, i.e. child erotica/modeling." (*Id.* at 17-18.) One image was classified by Special Agent Gordon as "CEM" because it was "Child exploitation material depicting sexual intercourse to include genital-genital, oral-genital, anal-genital, oral-anal, masturbation, or lascivious exhibition of the genitals or pubic area." (*Id.*) Petersen contends that the affiant omitted "the strong indicators that four out of the five images were not lascivious." (*Id.* at 19.) He also argues that information about images he himself posted to the board should have been included in the affidavit. He claims that the images he posted to the board were

"non-nude child erotica" and "modeling." (*Id.* at 21.)

The classification assigned to the images by Special Agent Gordon are not included in the warrant affidavit. (Doc. 379-1 at 44-47.) Nor is information about the other images Petersen posted to the board. (*Id.*) Although the government included in the warrant affidavit detailed descriptions of the images in dispute and claims that the images Petersen commented on are child pornography, those descriptions did not include information about Special Agent Gordon's initial coding or classification of the images. The affidavit included no mention of Petersen's posts of "non-nude child modeling" or "child erotica" to the bulletin board. Since information about these topics was available to agents the time the affidavit and application for a warrant was submitted, Petersen has made a sufficient initial showing that these materials were intentionally or recklessly omitted from the government's submission to the Magistrate Judge.

Having identified an intentional or reckless omission, the Court's task is to consider whether the affidavit supplemented by the omissions would support a finding of probable cause. *Stanert* 762 F.2d at 782. The effect of the omissions is considered cumulatively. *United States v. Esparaza*, 546 F.2d 841, 844 (9th Cir. 1976). "[O]nly the probability, and not a *prima facie* showing, of criminal activity is the standard of probable cause." *Spinelli v. United States*, 393 U.S. 410, 419

(1969).

The warrant affidavit, as modified for this purpose on review, would include information about the initial coding of the images and Petersen's other posts, in addition to the detailed descriptions of the images set forth at Paragraphs 103, 109, 110, and 115. It would also include mention of the fact that Petersen posted "non-nude child erotica and modeling" photos to the board. Inclusion of this information does not strain, much less destroy, the magistrate judge's finding of probable cause that a crime was committed. Inclusion of this information is not strictly exculpatory, as it is undisputed that one of the images Petersen allegedly commented about was initially classified as child exploitation material. Moreover, Petersen does not dispute the description of the images in the warrant affidavit. To the extent these descriptions differ from the initial coding of the images, the omissions still do not exculpate the Defendant. A full exposition of the initial coding process, including the fact that Special Agent Gordon was tasked with conducting a triage of over 300,000 images, juxtaposed with the particularized review and description of the images by Special Agents Martin and Damuth, leads to the conclusion that the initial coding of the images may have been in error and Agents Martin and Damuth's subsequent particularized review was the more accurate description of the content of the images. Considered alongside other

information properly included in the reformed warrant affidavit, probable cause would be present that Petersen committed one of the crimes alleged.

The omission of information about Petersen's other posts is also immaterial to the magistrate judge's finding of probable cause. The nature of Petersen's other posts is a matter of some dispute. Petersen claims he only posted "non-nude child erotica and modeling" to the board. (Doc. 377 at 21.) The government claims that Petersen distributed images from the LS series, an entity the government states is known to produce child pornography. (*See* Docs. 391 at 26 and 391-6 to 391-8.) The warrant affidavit supplemented by both the Defendant's assertion that he posted "non-nude child erotica and modeling" and the government's assertion that these photos were derived from a studio known to produce child pornography provides an ample factual basis for a finding of probable cause that Petersen posted child pornography to the board.

The warrant affidavit as supplemented provides a substantial basis for the conclusion that Petersen advertised, received, or accessed with intent to view child pornography on the board. Considered cumulatively, the omission of coding information as to the images Petersen commented on and information about Petersen's posting of "non-nude child erotica and modeling" was not material to the magistrate judge's finding that probable cause existed to issue a warrant to

-17-

search Petersen's residence.

Furthermore, none of Petersen's challenges in the Motion at bar speak to the conspiratorial conduct specifically alleged at the outset of the warrant affidavit and supported by facts adduced throughout the document. (*See* Doc. 379-1 at 2 (stating that the affiant has set forth facts "necessary to establish probable cause to believe that evidence of violations of Title 18, United States Code, Sections 2251 (d) & (e), which makes it a crime to advertise or conspire to advertise child pornography . . ." exists at Petersen's residence.)) Conspiracy is "a partnership in criminal purposes. The gist of the crime is the confederation or combination of minds." *Marino v. United States*, 91 F.2d 691, 693 (9th Cir. 1937). "A conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense. The partners in the criminal plan must agree to pursue the same criminal objective and may divide up the work, yet each is responsible for the acts of the other." *Salinas v. United States*, 522 U.S. 52, 63-64 (1997) (citations omitted).

Petersen's Motion does not dispel the factual allegations of the conspiracy to advertise child pornography set forth in the warrant affidavit. His present argument does not dispute that he joined the bulletin board on November 11, 2009 and last logged on March 16, 2012. (*See* Doc. 379-1 at 42.) Nor does the Motion

dispute the advertisement of child pornography on the bulletin board by its other members. (*See id.* at 20, 25-42.) Probable cause that Petersen unlawfully agreed to advertise child pornography by joining and participating in activities on the board, with knowledge of its purpose, can be established by the affidavit as submitted to Magistrate Judge Aspey, and modified by the revisions called for by the Defendant. Even if all of the factual material Petersen contests is purged from the affidavit and all of the omissions he cites are inserted, the affidavit relates sufficient facts on which to find a fair probability that he committed the crime of conspiracy to advertise child pornography. In fact, the addition of information about Petersen's other postings on the board, including information about his posting of "non-nude child erotica and modeling" images from the LS series, a known source of child pornography, further evinces his participation in the conspiracy set forth in the affidavit.

V.  **Conclusion**

The Court denys Defendant Joshua Petersen's Motion to Suppress Evidence and request for a *Franks* hearing. Petersen's claim that the warrant affidavit presented false information material to the Magistrate Judge's determination of probable cause is without merit, as his attack on the truthfulness of the affidavit is of dubious validity or relevance. His argument that material information was

omitted from the warrant affidavit is unpersuasive. If the warrant affidavit is reformed to include information about coding of images and other posts to the board by Defendant Petersen, probable cause remains that he committed one of the crimes set forth by Agent Martin. Furthermore, none of the challenges to the warrant affidavit raised by Petersen refute, much less relate, to a finding of probable cause that he committed the crime of conspiracy to advertise child pornography. Because Petersen has failed to raise a material challenge to the warrant affidavit, a *Franks* hearing is not warranted.

IT IS ORDERED that Defendant Joshua Petersen's Motion to Suppress and request for a *Franks* hearing, (Doc. 376), is DENIED. Because the Defendant's request for a *Franks* hearing is denied, the United States' Motion to Allow Expert Testimony by Video, (Doc. 378), is DENIED AS MOOT.

DATED this 16th day of May, 2014.

Donald W. Molloy, District Judge
United States District Court